## CIRCUIT COURT OF FAIRFAX COUNTY

Virginio S. Cruz

v.

Virginia Employment Commission

November 21, 1991

Case No. (Law) 108117

By JUDGE THOMAS S. KENNY

This matter comes before the Court on Mr. Cruz's petition for judicial review of the Employment Commission Examiner's decision U1-9005631 in which Mr. Cruz was found ineligible for unemployment compensation benefits. The petition for judicial review is denied for the reasons set forth below.

Under § 60.2-625(A) of the Virginia Code in any judicial proceedings under the Unemployment Compensation Act, the findings of the Commission as to the facts in the case, if evidentially supported and without fraud, are conclusive. This Court's jurisdiction is limited to the two relevant questions of law presented in this case: first, whether good cause was shown for an extension to file an appeal from the Deputy's determination as provided in § 60.2-619; and second, whether Mr. Cruz left work voluntarily without good cause as provided in § 60.2-618.2.

### 1. *Extension of appeal period*

Mr. Cruz takes issue with the fact that the Commission extended the time for Fairfax Hospital to appeal the initial adverse determination by the Claims Deputy, when the hospi-

tal did not request an extension before the expiration of the appeal deadline.

The Examiner found that the hospital, through its agent, had mailed an appeal request to the Commission within the statutory time limit. The request, which was sent by regular mail, was not received by the Commission. After the appeal period expired, the agent discovered that the Commission had not received the request, and immediately sent in a copy and explanation, which was accepted by the Examiner as "good cause shown."

A look at the decisions of the Commission concerning the issue of allowing an appeal to be filed after the deadline has expired shows that this has been the practice of the Commission since as early as 1972. (Decision No. 5876-C). In that case the decision of the Commission was lost in the mail and the claimant filed his appeal after the deadline indicated in the lost letter had expired, on the same day that he was informed by the local office that he had been disqualified for benefits.

The test the Commission uses in determining whether an appeal may be filed beyond the expiration of the deadline was set forth in *Barnes v. Economy Stores, Inc.* (Decision No. 8264-C):

> A reasonable construction of the good cause provision of the statute is that in order for good cause to be shown the appellant must show some compelling and necessitous reason beyond his control which prevented him from filing an appeal within the enunciated statutory time limit. Where such reason is shown which clearly demonstrates that it was impossible or impractical for the appellant to initiate his appeal within the statutory time limit, the extension may be granted in order to obtain fundamental fairness rather than reaching an unconscionable result.

Therefore, because the Commission treats a document lost in the mail as "good cause", this has been its practice for at least the last twenty years, great weight should be given to this position. *Dan River Mills, Inc. v. Unemployment Compensation Commission*, 195 Va. 997 (1954). Even though the statute is usually liberally construed in favor

of the employee, the same liberality should be used when construing it in favor of the employer. *Browne v. Va. Employment Commission*, 9 Va. Cir. 427 (1978).

## 2. *Circumstances of termination of employment*

Turning to the merits of Mr. Cruz's petition, whether he left the hospital voluntarily without good cause, the Court looks to the relevant findings of fact by the Commission.

Mr. Cruz began to work for Fairfax Hospital on January 16, 1989, as an environmental service aide. He was informed that all employees were required to work every other weekend and every other holiday. He stated that he was willing to work every weekend to be off on Mondays and Wednesdays to take classes. He worked under this schedule through September, 1989. Sometime thereafter, Mr. Cruz stated that his "obligations had changed" and that he needed more time off, including weekends. His schedule shows that the hospital accommodated him to the point where he virtually became a part-time worker. Towards the end of his employment, he worked no more than two or three days per week.

Though Mr. Cruz had previously told his immediate supervisor that he was a Jehovah's Witness, the supervisor did not know that this would cause any scheduling problems, because another employee, who was also a Jehovah's Witness, told her that she could work on any day. Mr. Cruz never told any supervisor that his religious beliefs would prevent him from working on certain days.

In September, Mr. Cruz was given a verbal reminder of his substandard attendance. Though his scheduled work days were significantly cut back, he was absent on December 12 and 26, 1990, as well as January 1, 1991. On January 2, 1991, he was informed that the head of the department was prepared to issue him a written counseling for poor attendance. Mr. Cruz, who had previously applied for a transfer to the medical records department, asked if this would affect that request. He was reminded that employees with active warnings on their record could not transfer. Mr. Cruz then asked what would happen if he resigned. The supervisor informed him that in that case, he would not be written up. Mr. Cruz then submitted his resignation in which, for the first time, he stated that he was resigning

because of conflicts between his schedule and his religious beliefs. The department head had not intended to discharge Mr. Cruz; nevertheless, he accepted the resignation.

As Mr. Cruz has explained, his church does not observe a fixed sabbath day; rather, religious activities are scheduled throughout the week. In September, his congregation changed their Sunday meeting schedule from mornings to afternoons. Mr. Cruz acknowledged that when he asked for specific days off, he would mention that it was for personal rather than for religious reasons.

As is evidenced by the facts, Mr. Cruz failed to inform and apprise his employer of what his religious belief is, the tenets thereof, and the resulting need to be off on particular days. He therefore did not leave his employment with "good cause" as to make himself eligible for unemployment compensation. The definition of good cause, as construed for many years by the Commission, and as set forth in *Lee v. Employment Commission*, 1 Va. App. 82, 85 (1985), is that:

> an employee who . . . becomes dissatisfied with his work, must first pursue every available avenue open to him whereby he might alleviate or correct the condition of which he complains before relinquishing his employment.

Mr. Cruz did not give his employers an opportunity to work with him to establish a suitable schedule that would accommodate his religious practices. Good cause is a discretionary determination and there seems to be no abuse by the Commission in this case. Mr. Cruz, as the Commission correctly determined, is ineligible for benefits.

Therefore, Mr. Cruz's petition for judicial review is denied.