COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


ACTUARIAL BENEFITS & DESIGN CORPORATION
                                              OPINION BY
v.      Record No. 0062-96-2        JUDGE LARRY G. ELDER
                                         DECEMBER 17, 1996
VIRGINIA EMPLOYMENT COMMISSION
AND
ROSEMARY LIPCSEY


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Melvin R. Hughes, Jr., Judge


          (D. Shane Smith; Hugh M. Fain, III; Brian R. M.
          Adams; Spotts, Smith, Fain & Rawls, P.C., on
          brief), for appellant.  Appellant submitting on
          brief.

          Lisa J. Rowley, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee Virginia Employment
          Commission.

          No brief or oral argument for appellee
          Rosemary Lipcsey.



     Actuarial Benefits & Design Corporation (appellant) appeals

an order of the Circuit Court of the City of Richmond (trial

court) affirming the Virginia Employment Commission's

(commission) decision that Rosemary Lipcsey is entitled to full

unemployment benefits.  Appellant contends that the trial court

erred because (1) the commission failed to make a finding that

Ms. Lipcsey had good cause to resign as required by Code

§ 60.2-618(1), and (2) the commission's statutory interpretation

of Code § 60.2-612(8) was erroneous.  For the reasons that

follow, we affirm in part, reverse in part, and remand for

further proceedings.

FACTS

Ms. Lipcsey worked as a nanny for either the president of appellant or appellant from August 22, 1993 to January 11, 1995. For the first few months, she cared exclusively for the president's children and was paid by the president's personal check. Starting in December, 1993, Ms. Lipcsey began caring for an additional child of an employee of appellant and her paychecks were thereafter drawn on appellant's account.

On January 6, 1995, the president became angry with Ms. Lipcsey for dressing one of her children in a snowsuit that was intended as a gift for someone else. Ms. Lipcsey was offended at the manner in which the president had spoken to her and believed the president should apologize. During a meeting on January 9 concerning the snowsuit incident, the president failed to apologize and Ms. Lipcsey gave the president two weeks notice of her resignation.

In the evening of January 10, Ms. Lipcsey informed an employee of appellant and left a note for the president indicating that she was sick with the flu and would be absent from work the following day. The next morning, the president called Ms. Lipcsey at home and, after a discussion, informed Ms. Lipcsey that she was discharged from her employment and that she should not report to work for the remainder of her

two-week notice period. Although appellant paid Ms. Lipcsey for January 9 and 10, Ms. Lipcsey was not paid for the remainder of her notice period.

On January 24, Ms. Lipcsey filed a claim for unemployment benefits. A deputy of the commission determined that Ms. Lipcsey was eligible for full benefits effective from January 22. Following an appeal by appellant, a hearing was held and the appeals examiner affirmed the deputy's award of benefits. At the hearing, appellant offered no evidence that Ms. Lipcsey was discharged for misconduct. Appellant appealed to the commission. The commission affirmed the decision of the appeals examiner, finding that Ms. Lipcsey was discharged by appellant two days after tendering her notice of resignation and that her discharge was not due to misconduct. The commission also ruled that "claimant's benefit eligibility is not subject to a maximum limitation of two weeks because her discharge was not made effective immediately upon the presentation of her notice to resign to the employer."

Appellant then filed a petition for judicial review with the trial court. The trial court affirmed the commission's decision, holding that the commission's findings of fact were conclusive and that the commission correctly concluded both that Ms. Lipcsey was not discharged due to misconduct under Code § 60.2-618(2) and that the two-week limit of Code § 60.2-612(8) did not apply to Ms. Lipcsey's case.

II.

COMMISSION'S FAILURE TO MAKE FINDING REGARDING GOOD CAUSE

Appellant contends that the trial court's affirmance of the commission's decision was erroneous because the commission failed to find whether or not Ms. Lipcsey had good cause for tendering her notice of resignation. Appellant argues that such a finding is required by Code § 60.2-618(1) before the commission can award Ms. Lipcsey benefits. We disagree.

We hold that due to the commission's decision in this case it was not required to make a finding regarding Ms. Lipcsey's cause for tendering her notice of resignation. The statutory scheme for determining the qualification of a claimant for benefits contemplates a multi-staged shifting of the burden of proof between claimant and employer, and the commission is not required to determine the issue of a claimant's cause for leaving in every case. In order to receive unemployment benefits, a claimant must be eligible under Code § 60.2-612 and not disqualified under Code § 60.2-618. These code sections deal with different matters, and "[a] claimant must be <u>eligible</u> for benefits before his <u>disqualification</u> need be inquired into." <u>Dan River Mills, Inc. v. Unemployment Comp. Comm'n</u>, 195 Va. 997, 1000, 81 S.E.2d 620, 622 (1954). The claimant has the burden of proving he or she has met the eligibility conditions of Code § 60.2-612. <u>Unemployment Comp. Comm'n v. Tomko</u>, 192 Va. 463, 468, 65 S.E.2d 524, 527 (1951). Once a claimant has met this

burden, the burden shifts to the employer to prove that the claimant is disqualified. Shuler v. Virginia Employment Comm'n, 9 Va. App. 147, 149-150, 384 S.E.2d 122, 124 (1989). Under Code § 60.2-618(1), a claimant is disqualified if "he left work voluntarily without good cause." The burden is on the employer to prove that the claimant left work voluntarily. Id. If the employer proves that the claimant's separation was voluntary, the burden shifts again to the claimant to prove that he or she left employment for good cause. 76 Am. Jur. 2d Unemployment Compensation § 106 (1992); 81 C.J.S. Social Security and Public Welfare § 275 (1977). Thus, the issue of a claimant's cause for leaving arises only if the employer proves that the claimant left his or her job voluntarily.

In this case, the issue of Ms. Lipcsey's reasons for tendering her notice of resignation never arose because appellant failed to prove that Ms. Lipcsey's separation was voluntary. The commission found that appellant discharged Ms. Lipcsey two days after she notified appellant of her pending resignation. In any judicial review of a decision of the commission, the factual findings of the commission are conclusive "if supported by evidence and in the absence of fraud." Code § 60.2-625(A). Although Ms. Lipcsey gave notice of her resignation on January 9, the commission's finding that Ms. Lipcsey was discharged is supported by her testimony that appellant's president told her on January 11, "Rosemary, I don't ever want you in my house again.

I want you out of my house as of today.  I don't ever want you around me or, me or my children ever again."  A claimant who gives notice of his or her resignation and is fired during the notice period and is not paid for the remaining portion of the notice period is considered involuntarily discharged.  Shifflett v. Virginia Employment Comm'n, 14 Va. App. 96, 98, 414 S.E.2d 865, 866 (1992) (citing Boyd v. Mouldings, Inc., Commission Decision No. 23871-C (Sept. 13, 1984));  cf. Code § 60.2-612(8).  Because appellant failed to prove that Ms. Lipcsey left voluntarily, the burden never shifted to her to prove good cause and the commission was not required to make a finding on this issue.[1]  We hold that the trial court did not err when it affirmed the commission's decision that Ms. Lipcsey was not disqualified from receiving benefits.

### III.

### INTERPRETATION OF CODE § 60.2-612(8)

Appellant contends that the trial court erred in affirming the commission's decision that Code § 60.2-612(8) did not apply to Ms. Lipcsey's case and that Ms. Lipcsey was entitled to full

---

[1]  Instead, this case was controlled by Code § 60.2-618(2), which disqualifies a claimant who "has been discharged for misconduct connected with his work."  Appellant had the burden of proving that its discharge of Ms. Lipcsey was due to misconduct.  Kennedy's Piggly Wiggly v. Cooper, 14 Va. App. 701, 705, 419 S.E.2d 278, 280 (1992).  At the hearing before the appeals examiner, appellant offered no evidence to establish misconduct by Ms. Lipcsey.  Therefore, the commission's decision that Ms. Lipcsey was not disqualified from receiving benefits was not erroneous.

benefits.  Appellant argues that the commission erred when it interpreted "subsequently" in the statute to mean "immediately" and decided that Ms. Lipcsey's eligibility was not capped because she was fired two days after she gave notice of her resignation to appellant.  We agree.

The issue in this case is one of first impression in Virginia.  We must decide whether the cap on benefits contained in Code § 60.2-612(8) applies only to a claimant who is terminated immediately after giving notice of his resignation. Code § 60.2-612(8) is essentially a codification of the commission's decision in Boyd v. Mouldings, Inc., except that it places a cap on the amount of benefits a Boyd-type claimant may receive.  In Boyd, the commission held that a claimant who tendered her notice of resignation, was fired the next day, and was not paid her salary for the remainder of her notice period, had been separated involuntarily and was eligible for benefits. Commission Decision No. 23871-C (Sept. 13, 1984).  In 1988, the General Assembly restricted the holding in Boyd by placing a two-week cap on the eligibility of claimants discharged before the effective date of their notice of resignation who would otherwise be disqualified from receiving benefits.  Code § 60.2-612(8) states:

> An unemployed individual shall be eligible to receive benefits for any week only if the Commission finds that:
>
>    *    *    *    *    *    *    *
>
>   (8)  He has given notice of resignation

-7-

> to his employer <u>and the employer subsequently</u>
> <u>made the termination of employment effective</u>
> <u>immediately</u>, but in no case to exceed two
> weeks for which he would have worked had the
> employee separated from employment on the
> date of termination as given in the notice;
> provided, that the claimant could not
> establish good cause for leaving work
> pursuant to § 60.2-618 and was not discharged
> for misconduct as provided in § 60.2-618.

(Emphasis added.) After the enactment of Code § 60.2-612(8), the commission has interpreted it to apply only when the termination by the employer immediately follows the receipt of a claimant's notice of resignation, such as when it occurs as "part of the same conversation or as soon as [the employee's] notice is discovered left on a supervisor's desk." Office of Commission Appeals, Virginia Employment Commission, <u>Guide for Effective Unemployment Insurance Adjudication</u> 27 (1990).

"It is well established that the 'primary objective of statutory construction is to ascertain and give effect to legislative intent. A related principle is that the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction.'" <u>Virginia Employment Comm'n v. Fitzgerald</u>, 19 Va. App. 491, 495, 452 S.E.2d 692, 694 (1995) (quoting <u>Turner v. Commonwealth</u>, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)). "'[W]ords and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest.'" <u>Id.</u> (quoting <u>Woolfolk v. Commonwealth</u>, 18 Va. App. 340, 347, 447 S.E.2d 530, 534 (1994)).

We hold that "subsequently" as used in Code § 60.2-612(8) means "at any time after notice is given and before the end of the notice period." This conclusion is dictated by the plain meaning of the word "subsequently" and the obvious intent of the General Assembly. First, "subsequently" is ordinarily accepted to mean "following in time; coming or being later than something else." Webster's Third New International Dictionary 2278 (3d ed. 1981); accord Commonwealth v. Ellett, 174 Va. 403, 410, 4 S.E.2d 762, 765 (1939). Construing it to mean "immediately" is contrary to its plain meaning.

In addition, the General Assembly manifestly intended the two-week cap to apply to all Boyd-type claimants discharged at any time during their notice periods who are otherwise disqualified for benefits. This intent is apparent from the relationship between Code § 60.2-612(8) and the provisions regarding disqualification in Code § 60.2-618. Code § 60.2-612(8) expressly provides that the two-week cap does not apply to a Boyd-type claimant if claimant's employer subsequently terminated his or her employment for a reason other than misconduct and claimant can prove that he or she resigned for good cause "pursuant to § 60.2-618."[2] In other words, the General Assembly intended to cast the net of Code § 60.2-612(8)

---

[2] The relevant part of Code § 60.2-612(8) says that the two-week cap applies "provided, that the claimant could not establish good cause for leaving work pursuant to § 60.2-618 and was not discharged for misconduct as provided in § 60.2-618."

-9-

wide enough to catch all Boyd-type claimants who are otherwise disqualified from benefits under Code §§ 60.2-618(1) and -618(2).

In Boyd, the claimant was fired one day after giving her notice of resignation to her supervisor but before the expiration of her notice period. Boyd, Commission Decision No. 23871-C (Sept. 6, 1984). With this intent in mind, "subsequently" must mean "after notice is given but before the end of the notice period" because this is the only interpretation that results in the application of the two-week cap to all Boyd-type claimants otherwise disqualified under Code § 60.2-618, instead of the limited number who happen to be discharged immediately after tendering their notice of resignation.

Moreover, interpreting "subsequently" in Code § 60.2-612(8) as suggested by the commission so that the two-week cap applies only to claimants fired immediately upon receipt of their notice of resignation would create a loophole not intended by the General Assembly and would thwart the purpose of the Unemployment Compensation Act (Act). The purpose of the Act is to provide temporary financial assistance to employees becoming unemployed "through no fault of their own." Gantt, 7 Va. App. at 634, 376 S.E.2d at 810. Code § 60.2-612(8) was passed to permit Boyd-type claimants who were neither allowed to work nor paid for their notice periods to receive benefits because these claimants were blameless for their unemployment during this period. Usually, claimants who tender notice of their resignation without good

-10-

cause are disqualified for benefits after the effective date of their resignation.  Code § 60.2-618(1).  However, interpreting "subsequently" to mean "immediately" would permit claimants who voluntarily resign to subvert Code § 60.2-618(1) and receive benefits following their resignations simply because their employer waited a few hours or days to discharge them.

The commission argues the General Assembly has acquiesced to its interpretation of Code § 60.2-612(8) because "it has been uniformly applied for many years in administrative practice." Dan River Mills, Inc., 195 Va. at 1002, 81 S.E.2d at 623. However, the commission cites only three of its decisions that apply its interpretation of Code § 60.2-612(8) in the eight years since the statute's enactment, only one of which was decided more than two years ago.  Tyson v. West, Crawley & Winn, P.C., Commission Decision UI-046906C (Jan. 10, 1995);  Huestis v. Commonwealth, Commission Decision UI-045100C (June 16, 1994); Hall v. Paul Gordon Associates, Inc., Commission Decision UI-034206C (Sept 12, 1990).  Thus, we cannot say that the commission's interpretation has been "uniformly applied for many years."  In addition, it is well settled that "[a]n erroneous interpretation of a statute by those charged with its [administration] cannot be permitted to override its clear meaning.  Amendments of statutes can only be made by the legislature and not by the courts or administrative officers charged with its enforcement."  Sanitation Commission v. City of

-11-

<u>Chesapeake</u>, 218 Va. 696, 702, 240 S.E.2d 819, 823 (1978).

We hold that the trial court erred when it affirmed the commission's decision that Code § 60.2-612(8) did not apply to Ms. Lipcsey's claim for benefits. As previously stated, Code § 60.2-612(8) applies to any claimant who (1) gives notice of his or her resignation and is then "subsequently" terminated effective immediately "after notice is given but before the end of the notice period," and (2) is otherwise disqualified under Code § 60.2-618(1) or -618(2). Ms. Lipcsey's case initially falls under Code § 60.2-612(8) because she tendered notice of her resignation and was subsequently discharged by appellant before the effective date of her resignation. In addition, she was only paid for the first two days of her notice period. However, we are unable at this point to dispose of Ms. Lipcsey's claim because the commission has not made findings on whether or not Ms. Lipcsey is otherwise disqualified for leaving work without good cause under Code § 60.2-618(1). Although we have held that Code § 60.2-612(8) applies to Ms. Lipcsey's case and the commission has already concluded that Ms. Lipcsey was not discharged for misconduct, as we discussed in Part II of this opinion, the issue of Ms. Lipcsey's reasons for her resignation did not arise because of the commission's application of Code § 60.2-612(8).

For the foregoing reasons, we affirm the decision that Ms. Lipcsey was qualified for benefits because she was not discharged

for misconduct, but we reverse the decision that Code
§ 60.2-612(8) did not apply to Ms. Lipcsey's case.  Therefore, we
remand this case to the trial court with directions to reverse
the commission in part and remand the claim to the commission for
proceedings to determine whether Ms. Lipcsey's eligibility is
limited to the twelve days of her notice period that were unpaid

because she cannot establish good cause for leaving pursuant to

Code § 60.2-618(1).

<u>Affirmed in part,<br>
reversed in part,<br>
and remanded.</u>